## CITY OF BATTLE CREEK v. HAAK.

1. ASSUMPSIT—WAIVER OF TORT—STATUTE—VALIDITY.
   Section 10421, 3 Comp. Laws, providing that, where an injury
   is occasioned by fraudulent representations or conduct for
   which an action on the case for fraud may be brought, an ac-
   tion of assumpsit may be brought to recover the damages, is
   not unconstitutional.

2. TRIAL—INSTRUCTIONS—STATING ISSUES.
   Where there was no occasion for reference to the several
   counts of the declaration in the charge, and the issues were
   fairly presented without such reference, there was no error
   in overruling a request to charge that no recovery could be
   had on a particular count to which a demurrer had been sus-
   tained.

3. PLEADING—DEMURRER—WAIVER.
   Pleading issuably to a count of a declaration after the sustain-
   ing of a demurrer thereto waives the question raised by the
   demurrer.

4. BILLS OF PARTICULARS—AMENDMENT.
   The allowance of an amendment of a bill of particulars is dis-
   cretionary.

5. FRAUD—OVERCHARGES—INSTRUCTIONS.
   Where, in an action for fraud, it appeared that defendant had
   been furnishing lumber for the repair of plaintiff's bridges
   and systematically raising the bills therefor, and an estimate
   of the overcharges could be arrived at only by subtracting
   from the aggregate of payments the aggregate of new lum-
   ber visible in the various structures, defendant was not en-
   titled to an instruction that plaintiff was entitled to recover
   only the overpayment shown on each separate bill.

6. SAME—INSTRUCTIONS—WEIGHT OF EVIDENCE.
   On an issue as to whether certain frauds had been perpetrated
   on plaintiff by defendant, an instruction that, if the jury be-
   lieved the testimony of a certain witness, and believed the
   frauds to have been perpetrated, plaintiff was entitled to re-
   cover, was not erroneous as permitting a recovery on the testi-
   mony of such witness alone.

7. Misconduct of Jury—Affidavits of Jurors.
    Affidavits of jurors will not be received to prove misconduct of the jury.

8. Deliberations of Jury—General Average.
    That the jury ascertained the average of their views as to the amount of damages will not invalidate their verdict where there was no previous agreement to abide the result.

9. Verdict—Amount—Computation—Definiteness.
    Where the verdict rendered was not in excess of the aggregate of the items of the bill of particulars, it was not objectionable on the ground that there was no tangible evidence as to any definite amount having been overcharged, and that it could not have been reached by any proper method of computation.

Error to Calhoun; Winsor, J.   Submitted February 14, 1905.   (Docket No. 150.)   Decided March 28, 1904.

Assumpsit by the city of Battle Creek against Harry K. Haak to recover money obtained by fraud and deceit. There was judgment for plaintiff, and defendant brings error.   Affirmed.

*J. M. & J. L. Powers, L. B. Tompkins,* and *Frank W. Clapp,* for appellant.

*O. Scott Clark (Arthur B. Williams,* of counsel), for appellee:

Where the jury reach their verdict by adding together the amount of damages that each juror is willing to award, and dividing the sum by 12, such conduct is not ground for new trial, in the absence of a showing that the jury acted corruptly, or that they previously agreed to adhere to the result. *Chandler* v. *Barker,* 2 Har. (Del.) 387; *Heath* v. *Conway,* 1 Bibb. (Ky.) 398; *Grinnell* v. *Phillips,* 1 Mass. 530; *Dorr* v. *Fenno,* 12 Pick. (Mass.) 521; *Village of Ponca* v. *Crawford,* 23 Neb. 662; *Cowperthwaite* v. *Jones,* 2 Dall. (U. S.) 55; *Harvey* v. *Jones,* 3 Humph. (Tenn.) 157; *Tinkle* v. *Dunivant,* 84 Tenn. 503; *Fowler* v. *Colton,* 1 Pin. (Wis.) 331; *Stanley* v. *Stanley,* 32 Wash. 489; *Watson* v. *Reed,* 15 Wash. 440; *Illinois Cent. R. Co.* v. *Able,* 59 Ill. 131; *City of Pekin* v. *Winkel,* 77 Ill. 56; *Barton* v. *Holmes,* 16 Iowa, 252;

*Dana* v. *Tucker*, 4 Johns. (N. Y.) 487; *Dunn* v. *Hall*, 8 Blackf. (Ind.) 32; *Wilson* v. *Berryman*, 5 Cal. 44; *Schoolfield* v. *Brunton*, 20 Colo. 139; *Hoover* v. *Town of Mapleton*, 110 Iowa, 571; *Empson Packing Co.* v. *Vaughn*, 27 Colo. 66; *City of Colorado Springs* v. *Duff*, 15 Colo. App. 437; *Jobe's Adm'r* v. *Weaver*, 77 Mo. App. 665; *Johnson* v. *Perry*, 2 Humph. (Tenn.) 569; *McDonnell* v. *Stage Co.*, 120 Cal. 476; *Cleland* v. *Borough of Carlisle*, 186 Pa. St. 110; *Moore* v. *Railway Co.*, 100 Mo. App. 665; *Owen* v. *Christensen*, 106 Iowa, 394; *Consolidated Ice Machine Co.* v. *Trenton Hygeian Ice Co.*, 57 Fed. 898; *Turner* v. *Water Co.*, 25 Cal. 397; *Guard* v. *Risk*,11 Ind. 156; *Hamilton* v. *Railroad Co.*, 36 Iowa, 31; *Deppe* v. *Railroad Co.*, 38 Iowa, 592; *Sullens* v. *Railway Co.*, 74 Iowa, 659; *Bailey* v. *Beck*, 21 Kan. 462; *St. Martin* v. *Desnoyer*, 1 Minn. 156; *Cortelyou* v. *McCarthy*, 37 Neb. 742; *Dodge* v. *Carroll*, 59 N. H. 237; *Conklin* v. *Hill*, 2 How. Prac. (N. Y.) 6; *Moses* v. *Railroad Co.*, 23 N. Y. Supp. 23; *Forbes* v. *Howard*, 4 R. I. 364; *Luft* v. *Lingane*, 17 R. I. 420; *Handley* v. *Leigh*, 8 Tex. 129; *Lee* v. *Clute*, 10 Nev. 149; *Johnson* v. *Railway Co.*, 46 Fed. 347; *Orange Belt R. Co.* v. *Craver*, 32 Fla. 28; *City of Kinsley* v. *Morse*, 40 Kan. 588; *Birchard* v. *Booth*, 4 Wis. 67.

The verdict should not be set aside even if there may be some evidence of improper practice upon the part of the jury, as long as the preponderance of evidence before the court is to the effect that no improper methods were employed. *Parshall* v. *Railway Co.*, 35 Fed. 649; *McNamara* v. *Dratt*, 40 Iowa, 413; *Fulliam* v. *City of Muscatine*, 70 Iowa, 436.

Affidavits or evidence of the jurors cannot be used to impeach their verdict or to show misconduct in the jury-room or improper methods used in arriving at their verdict. *Wixom* v. *Bixby*, 127 Mich. 479–486; *In re Merriman's Appeal*, 108 Mich. 454–462; *Murphy* v. *Murphy*, 1 S. Dak. 316 (9 L. R. A. 820, and note); also note to *Houk* v. *Allen*, 11 L. R. A. 706 (126 Ind. 568); 14 Enc. Pl. & Prac. 905; *Stull* v. *Stull*, 197 Pa. St. 243; *Hannum* v. *Inhabitants of Belchertown*, 19 Pick. (Mass.) 311–313; *Ladd* v. *Wilson*, 1 Cranch (U. S.), 305; *State* v. *Freeman*, 5 Conn. 348; *Haight* v. *Turner*, 21 Conn. 593; *Martin* v. *Ehrenfels*, 24 Ill. 187; *Allison* v. *People*, 45 Ill. 37; *Palmer* v. *People*, 138 Ill. 356; *Sanitary Dist. of Chicago* v. *Cullerton*, 147 Ill. 385;

*Taylor* v. *Giger*, Hardin (Ky.), 595; *Steele's Heirs* v. *Logan*, 3 A. K. Marsh. (Ky.) 394; *Campbell* v. *Miller*, 6 Mart. (La.) 623; *Cire* v. *Rightor*, 11 La. 140; *State* v. *Millican*, 15 La. Ann. 557; *Duhon* v. *Landry*, Id. 591; *Godfrey* v. *Soniat*, 33 La. Ann. 915; *Shepherd* v. *Inhabitants of Camden*, 82 Me. 535; *Cook* v. *Castner*, 9 Cush. (Mass.) 266; *Boston, etc., R. Corp.* v. *Dana*, 1 Gray (Mass.), 83; *Chadbourn* v. *Franklin*, 5 Gray (Mass.), 312; *Rowe* v. *Canney*, 139 Mass. 41; *Pratte* v. *Coffman*, 33 Mo. 71; *Sawyer* v. *Railroad Co.*, 37 Mo. 240; *Brewster* v. *Thompson*, 1 N. J. Law, 32; *Randall* v. *Grover*, Id. 151; *Dana* v. *Tucker*, 4 Johns. (N. Y.) 487; *Clum* v. *Smith*, 5 Hill (N. Y.), 560; *Taylor* v. *Everett*, 2 How. Prac. (N. Y.) 23; *Hulet* v. *Barnett*, 10 Ohio, 459; *Willing* v. *Swasey*, 1 Browne (Pa.), 123; *Cluggage's Lessee* v. *Swan*, 4 Bin. (Pa.) 150; *White* v. *White*, 5 Rawle (Pa.), 61; *Smith* v. *Culbertson*, 9 Rich. Law (S. C.), 106; *Mason* v. *Russell's Heirs*, 1 Tex. 721; *Burns* v. *Paine*, 8 Tex. 159; *Cheney* v. *Holgate*, Brayt. (Vt.) 171; *Cochran* v. *Street*, 1 Wash. (Va.) 79; *Amsby* v. *Dickhouse*, 4 Cal. 102; *Castro* v. *Gill*, 5 Cal. 40; *Rutland* v. *Hathorn*, 36 Ga. 380; *O'Barr* v. *Alexander*, 37 Ga. 195; *City Council of Augusta* v. *Hudson*, 94 Ga. 135; *Jacobs* v. *Dooley*, 1 Idaho, 41; *Reed* v. *Thompson*, 88 Ill. 245; *Cummins* v. *Crawford*, Id. 312; *Niccolls* v. *Foster*, 89 Ill. 386; *Lechleiter* v. *Broehl*, 17 Bradw. (Ill. App.) 490; *Barlow* v. *State*, 2 Blackf. (Ind.) 114; *Dunn* v. *Hall*, 8 Blackf. (Ind.) 32; *Bennett* v. *State*, 3 Ind. 167; *Conner* v. *Winton*, 8 Ind. 315; *McCray* v. *Stewart*, 16 Ind. 377; *Haun* v. *Wilson*, 28 Ind. 296; *Stanley* v. *Sutherland*, 54 Ind. 339; *Abel* v. *Kennedy*, 3 G. Greene (Iowa), 47; *Butt* v. *Tuthill*, 10 Iowa, 585; *Bradt* v. *Rommel*, 26 Minn. 505; *McCormick* v. *City of Monroe*, 64 Mo. App. 197; *Dodge* v. *Carroll*, 59 N. H. 237; *Lindauer* v. *Teeter*, 41 N. J. Law, 255; *Messenger* v. *Fourth Nat. Bank*, 48 How. Prac. (N. Y.) 542; *Williams* v. *Montgomery*, 60 N. Y. 648; *Gale* v. *Railroad Co.*, 53 How. Prac. (N. Y.) 385; *Moore* v. *Railroad Co.*, 24 Abb. New Cas. (N. Y.) 77; *Lafoon* v. *Shearin*, 95 N. C. 391; *In re Snyder's Estate*, Wilcox (Pa. Lack. Co.), 190; *Gurley* v. *Clarkson*, 30 S. W. (Tex. Civ. App.) 360; *Haley* v. *Cusenbary*, 30 S. W. (Tex. Civ. App.) 587; *Downer* v. *Baxter*, 30 Vt. 467; *Bull* v. *Commonwealth*, 14 Grat. (Va.) 613; *Howard* v. *McCall*, 21 Grat. (Va.) 205; *Moses* v. *Cromwell*, 78 Va.

671; *Elam* v. *Commercial Bank*, 86 Va. 92; *Phillips* v. *Town of Scales Mound*, 195 Ill. 353; *Schwamb Lumber Co.* v. *Schaar*, 94 Ill. App. 544; *Illinois Cent. R. Co.* v. *Souders*, 79 Ill. App. 41; *Clay* v. *City Council of Montgomery*, 102 Ala. 297; *Leighton* v. *Sargent*, 31 N. H. 119; *Walker* v. *Kennison*, 34 N. H. 257; *Tucker* v. *Town Council of South Kingstown*, 5 R. I. 558; *Luft* v. *Lingane*, 17 R. I. 420; *Robbins* v. *Windover*, 2 Tyler (Vt.), 11; *Studley* v. *Hall*, 22 Me. 198; *Pleasants* v. *Heard*, 15 Ark. 403; *Croasdale* v. *Tantum*, 6 Houst. (Del.) 218;   *St. Clair* v. *Railway Co.*, 29 Mo. App. 76; *Clark* v. *Manchester*, 64 N. H. 471; *Moses* v. *Railroad Co.*, 23 N. Y. Supp. 23; *International, etc., R. Co.* v. *Gordon*, 72 Tex. 44; *Chesapeake, etc., R. Co.* v. *Patton*, 9 W. Va. 648; *Rumford Chemical Works* v. *Finnie*, 2 Flip. (U. S.) 459; *Janes* v. *Hoehn*, 3 Ohio C. C. 433; *Montgomery St. Ry.* v. *Mason*, 133 Ala. 508; *Ward* v. *Blackwood*, 48 Ark. 396; *Philips* v. *Stewart*, 69 Mo. 149; *Carpenter* v. *Willey*, 65 Vt. 168; *Marvin* v. *Yates*, 26 Wash. 50; *Kunkel* v. *Hughes*, 6 Pa. Dist. R. 356; *St. Martin* v. *Desnoyer*, 1 Minn. 156.

HOOKER, J.   The defendant was an alderman of the city of Battle Creek, and as chairman of the bridge committee had charge of the repairing of some of its walks, bridges, etc., for which he furnished the materials, bills being filed, and allowed by the council from time to time, and afterwards paid.   Suspicions of the honesty of the defendant having arisen, some members of the council made investigation of the items for which bills had been rendered by the defendant, and this led to the bringing of this action to recover from him a large sum, claimed to have been paid for fraudulent items.   A trial resulted in a verdict for $1,750 in favor of the city.   The defendant has brought the cause to this court by writ of error.

There are nearly 200 assignments of error, but counsel have grouped them for the purpose of discussion, and marginal notes of exceptions in the record (a practice to be commended) have made reference to them easy.   Many of these exceptions can properly be omitted from the discussion, as they raise no substantial points or questions of

interest to the profession.   A statement of the facts essential to an understanding of the respective questions can best be made in connection with their discussion.   The testimony tended to show that one Toole, who was bookkeeper for the defendant from March, 1900, to August, 1901, made most, if not all, of the bills in question; that a bill for the lumber for a bridge called the "Angell Street Bridge" was for one wagon load more lumber than was furnished; that it occurred by mistake, and that Haak's attention was called to it, and he said he intended to make it right at the next meeting of the council.   On the occasion of a subsequent talk about this he said that he had intended to make it right, but the members did not notice it, so he let it go.   This was in August, 1900.   He stated further that all bills were made out from the defendant's books by him ( Toole ), and that sometimes an excessive amount was entered in the books, and at other times the bills were made for more than the books showed; that this was done systematically, and in different ways—sometimes by increasing the number of pieces of lumber, and sometimes by mistakes in computation.   He stated that these things were done by defendant's instructions, and included all bills made after the Angell street bill was paid.   The witness was unable to state the amounts.   He testified further that after defendant's fraud was discovered he produced a new set of books, which he told Toole to open, and copy some items from the old ones; that Haak stated to him in that connection that his counsel had advised this, so that the discrepancy between the books and the bills could not be shown.   Toole did not finish this work.   He testified that he concluded that he could not "copy the books and do as he [Haak] wanted him to," so left his employment, and disclosed the situation to his uncle, one Patrick Hart, "including what he had done to assist in swindling the city," and afterwards went to the law office of Hulbert & Mechem, where he met the mayor and other officials, and made affidavits in relation to the subject.   This action followed, and was commenced by

attachment. The declaration was in assumpsit, and com-
prised two special counts, and the common counts.

Of the special counts, the first made reference to 3
Comp. Laws, § 10421, which was an act passed in 1897,
and is as follows:

"An act to provide for bringing actions of assumpsit in
    certain cases, and to provide that in such cases the
    cause of action shall survive.
    "(10421). SECTION 1. *The People of the State of
Michigan enact,* That in all cases where, by the fraud-
ulent representations or conduct of any person, an injury
has been or shall be produced, either to the person, prop-
erty, or rights of another, for which an action on the case
for fraud or deceit may by law be brought, an action of
assumpsit may be brought to recover damages for such
injury, and in all such cases a promise shall be implied by
law to pay all just damages arising from such fraud or
deceit, and may be so declared upon."

The reference to this act in the count was as follows:

"Whereby said plaintiff has sustained great damage,
of, to wit, two thousand dollars ($2,000); whereby a right
of action has accrued to said plaintiff, and said plaintiff
does hereby claim all right and benefit which it may
possess to bring and maintain this action under and by
virtue of section 10421 of the Compiled Laws of 1897 of
the State of Michigan, by virtue of which statute a prom-
ise has been and is implied by law on the part of said de-
fendant to pay to said plaintiff its just damages arising
from such fraud and deceit, whereby said defendant, upon,
to wit, the said 7th day of August, A. D. 1901, became in-
debted to said plaintiff in the sum of, to wit, two thou-
sand dollars ($2,000)."

The second count was substantially like the first, except
that it concluded with the following language in place of
that hereinbefore last quoted:

"Whereby said defendant overcharged said plaintiff in
the several bills and charges above mentioned, and said
defendant was overpaid by said plaintiff, and said defend-
ant received of the money and funds of said plaintiff,
without having given any consideration therefor, in the
aggregate a large sum of money, to wit, the sum of two

thousand dollars ($2,000), whereby said plaintiff has sustained great damage of, to wit, two thousand dollars ($2,000), whereby said defendant upon, to wit, the said 7th day of August, A. D. 1901, became indebted to said plaintiff in the sum of, to wit, two thousand dollars ($2,000)."

To these were added the common counts.

This declaration was demurred to, and the demurrer was sustained as to the second count, and overruled as to the other counts. Thereupon a plea of the general issue was filed. One of the grounds of demurrer was that the statute section 10421 was unconstitutional. Its constitutionality appears to have been considered and upheld in the case of *First Nat. Bank of Ovid* v. *Steel*, 136 Mich. 588.

Counsel requested the court to charge the jury that—

"No recovery can be had upon the second count of the declaration, for the reason that a demurrer to said second count has been sustained by the court, and the plaintiff has not amended the said second count."

There is nothing in the record to which our attention has been called to indicate that the cause was submitted to the jury upon the second count, or, for that matter, that their verdict was made to depend upon what they might think of any of the counts. There was no occasion for reference to the respective counts, and the learned circuit judge who tried the cause properly omitted allusion to the declaration, and clearly stated the issue to be whether the defendant had, through fraud and deceit, charged and received payment from the city for more lumber than he had furnished between the dates April 1 and August 8, 1901, and said that the theory upon which the case was submitted by the plaintiff was to charge him with all money paid for lumber furnished between said dates, and to credit him with all lumber so furnished. The declaration in the case (omitting the second count, which was not considered as a part of it) justified the trial of the case upon this theory, unless the bill of partic-

ulars precluded it, and there was no occasion for saying to the jury that they should or should not render a verdict upon one or another count. Such instruction would have been more likely to confuse than to subserve a useful purpose.

What has been said applies to several similar requests to charge, which we need not state at length. As to the questions involving the joinder of counts, and the sufficiency of the several counts, the disposition of the demurrer settled them.

The bill of particulars is lengthy, covering 37 pages of the record. It states that plaintiff's demand consists of overcharges for lumber, which have been paid to the defendant. It states in a general way the purposes for which lumber was furnished. It then attempts to give tabulated statements of lumber charged for, i. e., defendant's bills, which it claims to have been allowed and paid, each accompanied by a statement of lumber admitted to have been furnished, the remainder resulting from a subtraction of the latter from the former, constituting the overcharge claimed in each instance. Two items were added to this bill by way of amendment, against defendant's objection. In passing, we may dispose of the assignment of error covering this amendment by saying that it was a discretionary ruling, and, moreover, it would be entitled to our approval, were we called upon to review it.

Counsel for the defendant urge that, under the bill of particulars, it was improper to permit the jury to dispose of the case upon the theory of the plaintiff, as stated by the trial judge, claiming that they should have been directed to find the specific amount of overcharge on each bill. They requested the court to charge that:

"There have been a large number of these bills introduced in evidence, and, in order to determine whether the plaintiff is entitled to recover for overpayments made to the defendant, you should consider each of these bills separately, and determine from the evidence in the case, if you can do so, whether there has been an overpayment

made on any of these bills, and, if so, how much such overpayment was in each bill; and, if you cannot so determine, your verdict must be for the defendant—no cause of action."

This was accompanied by a request that "no recovery can be had by the plaintiff in this case, for the reason that there is no evidence in the case from which it can be determined with a sufficient degree of certainty or accuracy how much lumber was delivered to the plaintiff by the defendant, on any one or all of the bills paid by the plaintiff;" and error was assigned for a failure to give each of them.

The record shows that evidence tending to show shortage consisted in part of statements of witnesses who had examined the structures for which the several bills were rendered, and their computation of the amount of new lumber visible therein. An examination of the testimony shows that the money paid could only be arrived at by taking the aggregate of the bills, or such of them as the jury should find to have been paid. On the other hand, the proof of shortage was by testimony tending to show that the amounts stated in the bills were larger than the respective amounts furnished. The aggregate of the payments and the aggregate value of the lumber found to have been delivered, upon the respective bills, furnished the only method by which the total overcharge could be accurately determined. While the request tendered was not given, the jury were given to understand that it was only by finding overcharges upon some or all of these bills that a verdict could be rendered.

The court said:

" In this case, if you believe the testimony of the witness James Toole in regard to the alleged frauds on the part of the defendant to be true, and that fraud was actually perpetrated against the city by the defendant Haak, in the furnishing of the lumber and receiving the same, then it is your duty to render a verdict in favor of the city and against the defendant for such an amount as you find

the overcharges against the city in the various bills may amount to."

Again he said:

" If you find that in any of the bills there has been a clerical mistake made, or any overcharge made and paid, that fact alone will not authorize you to find that there have been mistakes or overcharges made in other bills. And if you find that the defendant had conceived and was carrying out a scheme or plan to obtain more money from the city than the value of the lumber delivered, and he obtained the approval of the officers and agents of the city to the bills presented by him, falsely representing them to be true, or by undue or improper means he obtained the approval of the city officers to the bills, he (the defendant) knowing them to be false and untrue, and in pursuance of his plan or scheme, then it is your duty to find a verdict for the plaintiff for the amount which you shall find that he (the defendant) so obtained."

And again:

" I instruct you that in order to entitle the plaintiff, the city of Battle Creek, to a verdict in this case, the city must show by a preponderance of evidence (and you will remember what I have said about that) not only that the city has paid for more lumber than has been delivered by defendant, but the amount of such overpayment must also be shown, together with the fraud of defendant. The burden of showing such overpayment and fraud also rests upon the plaintiff in this case. I instruct you that if the plaintiff has shown by a fair preponderance of the evidence that, through the fraud or false representations of the defendant, Harry K. Haak, it has paid him for more lumber than he actually delivered to the plaintiff during the time named, then it is your duty to determine the amount of such excess so overpaid by the city to the defendant, and to render your verdict for the plaintiff for whatever amount you may find such overcharge to be. And this you must determine from the proofs and bills which have been submitted to you in evidence. I charge you that, in order to determine whether the plaintiff is entitled to recover for overpayment made to the defendant, you have a right to consider each and all of the bills offered in evidence in the case, and from such evidence and bills determine whether there has been an overpayment made or not. And by your verdict, if any overpay-

ment you find, you should find the sum, and so declare.
And if you are unable to find any overpayment from the
evidence and the bills in the case, and in such case you
cannot so determine, then your verdict must be for the
defendant—no cause of action."

He endeavored to guard the rights of the defendant by
saying:

" In this case, if you believe the testimony of the wit-
ness James Toole in regard to the alleged frauds on the
part of the defendant to be true, and that fraud was act-
ually perpetrated against the city by the defendant, Haak,
in the furnishing of the lumber and receiving the same,
then it is your duty to render a verdict in favor of the city
and against the defendant for such an amount as you find
the overcharges against the city in the various bills may
amount to."

In our opinion, the defendant did not suffer from the
omission to give these requests, for they were sufficiently
covered by the charge.

It appears to be assumed that the jury did not consider
the items of the bill of particulars separately, but there
was no other feasible method of arriving at a result, un-
der the charge given, and we think the jury must have
understood this.

A number of assignments relating to the instructions
given may be passed with little comment: In Nos. 1 and
2, the court alluded to the overcharges as being between
April 1st and August 8th. It is said that two bills were
O. K.'d on July 22d, but not paid. There is nothing in the
charge that warrants the inference that all bills between
those dates contained overcharges for which recovery
might be had. In No. 3, exception is taken to the in-
struction regarding the testimony of Mr. James Toole.
It is hereinbefore quoted, and need not be repeated in this
connection. Counsel say, " The criticism is that it per-
mitted the jury to find a verdict in favor of the plaintiff
and against the defendant upon the testimony of witness
Toole alone." · The quotation itself contains a refutation
of this claim. We omit further reference to No. 4 than

the statement that, in our opinion, it was impossible for the jury to misapprehend the charge so far as to suppose that recovery could be based on bills anterior to April 1st or after August 8th. In No. 5 the instructions relating to the preponderance of proof, given on the occasion of the return of the jury for further instructions, contain no error.

There are about 156 assignments of error, based upon rulings relating to the admission of testimony. We have examined each of them, and not only find no error in them, but feel justified in saying that they raise no legal questions that require discussion. We have much hesitation in appearing to criticise the judgment of counsel in such matters, especially in view of the circumstances under which it must be exercised, yet we must refuse to burden our opinions with discussions of such objections.

The remaining question relates to motion for new trial. The brief tabulates the errors relied on in that connection, as follows:

" *First.* Errors of the court in charging the jury, and in refusing to charge as requested by defendant.

" *Second.* Want of sufficient evidence to sustain the verdict.

" *Third.* That the verdict was contrary to law.

" *Fourth.* That the jury disregarded the evidence and the instructions of the court.

" *Fifth.* That the jury arrived at the amount of their verdict by an illegal method.

" *Sixth.* That the verdict was contrary to and against the evidence in the case."

The first is sufficiently covered by what has been said. The others may be discussed together, as they all relate to the alleged adoption by the jury of the principle of " general average " in determining the amount of damage.

In support of this motion the defendant has not hesitated to unqualifiedly swear, in an affidavit, that the jury made no attempt at a computation, but agreed to determine the amount of the verdict to be given by taking one-twelfth of the aggregate sum of the opinions of the several jurors,

which agreement was carried out.    He failed to state how
he knew what occurred in the jury-room.    Another affi-
davit of similar character was made by three of the jurors,
and this was not considered by the court, being rejected
under the familiar rule that affidavits of jurors will not be
received to prove the misconduct of the jury, and thereby
impeach their verdict.    Counter affidavits were made by
several of the jurors, and one or two of those first men-
tioned subsequently filed affidavits, qualifying their first
statements.    From all the evidence furnished, the court
found, and states, in substance:    That there was much
discussion and computation of the amount that plaintiff
should recover.    That there was a proposal at one stage
of the deliberations that each juror mark the amount that
he thought plaintiff should recover, and that this was done,
and the amounts were read.    Some jurors wrote down these
amounts, after which it was suggested that the general
average be ascertained, and this was done.    That up to
this time no agreement or understanding had been made
or had as to what the verdict should be, or how it should
be reached.    Afterwards, there was further discussion,
and by mutual agreement the amount was settled at $1,750,
which was less than the amount of the general average.

The court did not err in refusing to receive the affidavits
of the jurors filed in support of the motion.    It is a rule
well established that this cannot be permitted.    It is set-
tled for this State by the case of *Merriman's Appeal*, 108
Mich. 462, where an opinion written by Mr. Justice MONT-
GOMERY reviews the authorities.    This case was followed
in the case of *Wixom* v. *Bixby*, 127 Mich. 479, in an
opinion written by the present Chief Justice.    A long list
of authorities will be found in the brief of plaintiff's coun-
sel in the present case.    The affidavits filed by the plain-
tiffs indicate that during their deliberation the jurors as-
certained the general average of their views relating to the
subject of damages.    This is a disquieting fact, for it sug-
gests the suspicion of an unlawful verdict, but the
suspicion is not necessarily a just one.    Many cases hold

that the averaging of views, where there is no agreement to abide the result, should not invalidate the verdict. It is only when the record overcomes the presumption of proper methods that the verdict should be set aside. There is affirmative proof that this verdict was not a "quotient verdict," notwithstanding the fact (which is proved if the affidavits of any of the jurors should be looked into upon the subject) that for one purpose or another the general average of views was ascertained. Under the authorities cited, we think that the learned circuit judge did not err in refusing to set aside the verdict on this ground.

Counsel for the defendant strenuously urge that this record and verdict show that the verdict could not possibly have been reached by proper methods. His argument on this proposition, briefly stated, is that, while there was clear proof of the amount paid him, there was no tangible and certain evidence that any definite amount was overcharged upon any bill or bills, and therefore there could have been no lawful verdict reached by computation, and that is also shown by the amount of the verdict rendered, which, it is stated, could not be reached by any proper method of computation, and therefore must have been reached in some other way, involving guessing or compromise. If it be conceded that the jury must find the amount of overcharge upon each particular item of the bill of particulars, it does not follow that such amount must accord with the amount stated in the bill. If it might not exceed, it certainly might be less, than the amount claimed, and thus the verdict cannot be said to be an impossible one, legally, under the proof, unless it exceed the aggregate of the items of the bill. There was proof in the case tending to show, with a greater or less degree of accuracy, the lumber furnished on each bill, and thus indirectly to furnish a means of ascertaining (counsel say computing) the overcharge. In any or every instance the jury might find an overcharge less in amount than the item as stated in the bill. Furthermore, there

was testimony by Toole that nearly every bill was raised, but he could not tell definitely how much in any case, but in some cases doubled, and in some it was less; that he thought in one bill each item was raised from four to fourteen pieces. It cannot be said that the proof is so uncertain that it fails to justify a verdict, without suggesting that if a man can get a sufficient degree of rascality into his methods, so as to make it difficult to say just how much he has defrauded in a particular instance or item, a jury cannot determine how much he has wronged his adversary, and he is to be relieved from accountability. The office of a bill of particulars is to reasonably apprise the defendant of the nature of the plaintiff's claim. This one gave defendant to understand that he was charged with padding the bills itemized therein, and any proof that showed this was to be considered, and justified the jury in determining the respective amounts, when it established a probability of such amount. Upon the whole, the record discloses a patient and painstaking trial upon the part of the trial court, in every way fair and free from error. While his review of the case upon the motion for new trial discloses disapproval of the method pursued by the jury, it appears to rest upon the lawyer's appreciation of the danger to be apprehended from a departure from proper methods, rather than upon evidence that the same should overcome the presumption that the verdict was not affected thereby. In following the law in this matter, and determining that the invalidity alleged was not proved, we find no error.

The judgment is affirmed.

CARPENTER; BLAIR, MONTGOMERY, and OSTRANDER, JJ., concurred.