HAPKE v. DAVIDSON.

1. CONTRACTS—CONSTRUCTION—IMPLIED CONTRACTS—SERVICES.
    Under a written agreement of plaintiff to supervise the
    removal of a beet sugar factory from one location to an-
    other, and to rebuild the factory and assist in its opera-
    tion for a period of months, plaintiff to furnish an
    engineer to superintend the erection of the machinery
    and one for the erection of the building and to pay wages,
    salary, and expenses and furnish architect's plans, etc.,
    with a guarantee that the plant should operate as eco-
    nomically and efficiently as before, in consideration
    whereof defendant promised to pay $15,600, as stated,
    in detail, in the agreement, which also provided that both
    parties should use their best efforts to complete the re-
    moval and reconstruction of the factory and to promote
    its successful operation up to February of the following
    year, and that plaintiff should assist in the operation of
    the factory up to that time, services and labor of the
    plaintiff in securing a site, negotiating for tracks and
    rates on shipments and purchases, and securing acreage
    from farmers to grow beets were not included by the
    terms of the contract.

2. SAME—INTERPRETATION.
    It is a rule of construction of contracts that the court
    should endeavor to determine the intention of the parties,
    and should examine and give effect to every word or
    phrase, so far as practicable.

3. SAME—ADMISSIONS—WEIGHT OF EVIDENCE.
    But an admission of the plaintiff contained in a letter,
    that he did not intend to compel the defendant to pay
    for extra services, if defendant, as he had previously
    promised, would assist him financially, taken with the
    presumption of fact that services performed should be
    considered as included by the provisions of the contract,
    held, to require the court to set aside the verdict and
    judgment as against the weight of evidence.

4. EVIDENCE—WRITTEN AGREEMENT—PAROL EVIDENCE.
    Negotiations prior to the execution of a contract, being
    merged in the written agreement, the trial court, in an

action of assumpsit for extra services performed by plaintiff, correctly excluded correspondence tending to show that the extra items were intended to be covered by the contract; and evidence of a prior conversation was also incompetent.

5. AMENDMENTS—BILL OF PARTICULARS—LIMITATION OF ACTIONS.
Where the plaintiff, without obtaining leave of the court, filed an amendment to his bill of particulars and thereby added items of a later date, claimed by defendant to be barred by limitation, and where the trial court denied a motion to strike the amendment from the files, based on the objection that the items added were claimed to be new and distinct and because the statute of limitations had run against them, the court acted within its discretion in permitting the amendment to stand.

6. FRAUDS, STATUTE OF—ASSIGNMENT—IMPLIED CONTRACT.
Where it was claimed by the defendant that services for which plaintiff claimed compensation would be a liability against another party, a corporation, which had been incorporated to take over the factory erected under the agreement, the contention that the action would be barred by the statute of frauds was not tenable.

7. SET-OFF AND COUNTERCLAIM—PARTIES—CORPORATIONS.
An indebtedness to a corporation, of which the defendant in the action was the controlling stockholder, could not be used as an offset against plaintiff's claim for an amount due from the individual.

Error to Bay; Collins, J. Submitted November 24, 1914. (Docket No. 27.) Decided April 7, 1914.

Assumpsit by Theodore Hapke against James Davidson for services performed. Judgment for plaintiff. Defendant brings error. Reversed.

*Hall & De Foe,* for appellant.
*Joslyn & Houghton,* for appellee.

KUHN, J. The defendant, James Davidson, prior to February 20, 1904, was interested in a factory at Dresden, Ontario, for the manufacture of beets into sugar. The operation of the factory not being suc-

cessful in that locality, he made a contract with the plaintiff, Theodore Hapke, who was an expert agriculturist, to remove the same, which contract in terms was as follows:

"This agreement, made February 20th, 1904, at Detroit, Michigan, between Theodore Hapke, of the city of New York, party of the first part, and James Davidson, of West Bay City, Michigan, party of the second part, Witnesseth:

"1. Said party of the first part hereby agrees to supervise the removal of the Beet Sugar Factory of the Dresden Sugar Co., Ltd., from its present location at Dresden, Ont., to Janesville, Wis., or such other place as the said party of the second part may designate, and also the re-erection and reconstruction of said factory at the place to which it shall be so removed and to also assist during the operation of the same up to February 1st, 1905.

"2. Said party of the first part also agrees to furnish for such work a first class engineer to superintend the erection of the machinery of said plant, and also another first class engineer to supervise the re-erection of the building thereof; both said engineers shall devote their entire time and attention to said work until it is all accomplished and complete, and said factory in successful operation; their said services shall continue during the operation of said plant when so removed and re-erected, but not later than February 1st, 1905.

"3. Said party of the first part agrees to pay all the wages, salary and expenses of the said two engineers, also his own office expenses of every nature and description, including telegrams and correspondence, and all traveling expenses; and he further agrees to furnish full details, plans and specifications for the removal and re-erection of said plant as aforesaid, that no material changes shall be made therein without the approval of said party of the second part; and said party of the first part also guarantees that said factory shall be so re-erected in its new location that it can be there operated as economically and efficiently as heretofore.

"4. In consideration of this agreement and the performance thereof by said party of the first part, the

said party of the second part hereby agrees to pay him, in full, for all services and expenses on account of said work, the sum of fifteen thousand six hundred dollars, as follows:

"One thousand dollars at the signing of this agreement, and the balance in equal monthly installments of thirteen hundred and twenty-seven dollars and thirty-three cents each, on the first day of each and every month thereafter, commencing April 1st, 1904, until said balance is paid.

"5. It is understood and agreed that said party of the second part is to pay for all the work, labor, freight and other expenses attendant upon such removal and re-erection of said plant, except such expenses as are herein specified to be borne by said party of the first part.

"6. It is further agreed that said party of the second part will use his best endeavors to expedite said work of removal and re-erection, and that both of said parties hereto will faithfully use their best efforts to accomplish the removal of said factory, its re-erection as aforesaid, and its successful operation in its new location up to February 1st, 1905.

"In witness whereof, said parties have hereunto set their hands the day and year first above written.

[Signed]    "THEO. HAPKE.
[Signed]    "JAMES DAVIDSON."

At the time of the execution of this contract, the defendant delivered to the plaintiff the following writing:

"To Whom It May Concern:

"Mr. Theodore Hapke has been employed by me to superintend the removal of the beet sugar factory now on premises near Dresden, Ontario, to Janesville, Wisconsin, or such other place as I may designate; he is authorized to make all necessary arrangements respecting the entry of the property into the United States custom house, and to act for me as my agent in the re-erection of said factory at the place which I may designate; and to do what may be incidentally necessary to the proper removal and re-erection of said factory.

"JAMES DAVIDSON."

The factory was removed, re-erected, reconstructed, and operated at Janesville, and the plaintiff performed all of the work required of him under the agreement of February 20, 1904, and the defendant paid, as contracted, the entire sum of $15,600. It is the claim of the plaintiff, in practically the language of a request to charge as given by the court, that:

"After February 20, 1904, he rendered certain services and expended certain moneys in connection with securing a site for the factory at Janesville and negotiating with the railroad companies for joint railroad tracks, and in securing acreage for beets from farmers in the vicinity, and in the payment of agents' commissions to solicit the farmers to grow such beets, and in negotiating with the railroad companies for securing rates on machinery shipped to Janesville, and upon sugar shipped from the factory at Janesville, and in negotiating with railroad companies for rates upon coal, limestone, and other supplies required in the operation of such factory, and in negotiating with railroad companies in regard to demurrage charges on cars of coal and beets, and in going to Milwaukee in regard to the entering of the machinery into the country from Dresden, and in going to Milwaukee and Washington to secure the release of certain bonds given by the defendant in connection therewith, all of which said services and expenditures of money plaintiff claims are extra services and expenditures not included in the written contract of February 20, 1904, for which the defendant should compensate and reimburse him; and the plaintiff claims that he performed these extra services and made such disbursements at the request of the defendant, and upon the promise of the defendant to pay him well for such services, and to reimburse him for such expenditures, and that the plaintiff called the defendant's attention to such services and expenditures from time to time while the services were being performed and the expenditures were being made, and that the defendant told him he would pay him for such services and reimburse him for the expenditures, but he did not do so, nor did he refuse to pay him for such services and reimburse him for such expenditures, nor deny

liability therefor, but said to the plaintiff, in substance, 'What is a few thousand dollars to you if I help you to make several thousand dollars by going in with you in the building of sugar beet factories?' and the plaintiff claims that he did not relinquish his right to be paid any money for such services and disbursements, nor did he agree to be compensated for such services and disbursements by the defendant's promise, if carried out, to interest himself with the plaintiff or back the plaintiff in the removal of beet sugar factories, but that the plaintiff did forego presenting a bill or insisting upon payment in money at the time of such conversation with the defendant for such services and disbursements, relying upon the defendant's promises that he would back him up or help him out with a moderate amount of capital in the removal of sugar factories, but that defendant failed and refused to interest himself with the plaintiff or furnish a moderate amount of capital in the removal of the sugar factories, and that when defendant did so refuse and fail to interest himself with the plaintiff in the removal of sugar factories, or invest a moderate amount of capital, the plaintiff presented a bill for the extra services claimed to have been performed by him, and for certain disbursements, and demanded payment therefor in accordance with defendant's promise to pay."

The claim of the defendant, as given in the charge of the court, was as follows:

"The defendant denies entirely that he is indebted to the plaintiff in any sum for any such claimed service or expenditure, insisting that if such services were rendered and moneys expended, all of which he questions in amount, they were rendered and expended by the plaintiff without any request upon the part of defendant that plaintiff should do so, and without any knowledge that plaintiff ever expected to be compensated or reimbursed therefor, but rather that plaintiff understood that such service and expenditure were a part of the agreement of February 20, 1904, which he was called upon to perform and do."

The issue thus formed being submitted to the jury, a verdict in the sum of $1,917 for the plaintiff was

returned. Judgment being had thereon, the cause was brought to this court by writ of error.

The numerous assignments of errors have been conveniently grouped by counsel for defendant, and under appropriate headings have been discussed by counsel in their briefs:

Does Contract of February 20th Include by its Terms Items of Plaintiff's Claim? It is the contention of the defendant that the economical, efficient, and successful operation provided for in section 3 of the contract necessitated the securing of a site where railroad tracks could be secured, sufficient acreage of beets, reasonable freight rates upon machinery and material shipped in, coal, limestone, and other supplies required, and upon the manufactured product shipped out, and all things which must receive attention necessary to the successful operation of a manufacturing plant, and which tend to affect the profits of the owner, and that the provision in the contract that the plaintiff would use his best efforts towards the successful operation of the factory up to February 1, 1905, called upon him to do all the things he claims as extra services. It is the contention of the plaintiff that the agreement provides simply for an engineering and mechanical proposition, and that the matters in controversy are incident only to the success of the enterprise, and not to the successful operation of the factory. Having in mind the well-established rule that in construing a contract the endeavor should be to arrive at the intention of the parties, and that in doing so all its parts must be examined and effect given to every word and phrase, if practicable (*Plano Manfg. Co.* v. *Ellis,* 68 Mich. 101 [35 N. W. 841]), we are of the opinion that the contention of the plaintiff and the conclusion that the trial court came to is the correct one. The contract did not require, and the plaintiff did not undertake to guarantee, that the

enterprise should be a success and the venture profitable. He did contract to supervise the mechanical part of removal and reconstruction so that the machinery would operate as economically and as efficiently as before, up to February 1, 1905. That it did so is unquestioned. We do not think that the items of plaintiff's claims submitted to the jury can be said to be covered by the terms of the agreement.

**No Implied and No Express Agreement Other Than in Contract February 20, 1914.** It was claimed by the plaintiff and denied by the defendant that the services performed by plaintiff for the recovery of which this suit is brought were done at the instance and request of the defendant, with his knowledge and approval, for his special benefit, and were received by him. The issue thus made was submitted as a question of fact for the determination of the jury. It is urged by the defendant that it is clear from the correspondence of the parties that it was the understanding of the plaintiff that the services for which compensation is now claimed came under the contract, and that no claim was made by him for extra services until April 5, 1905, when he wrote a letter, in which he said:

"As to the bill for extra services, I did not intend to make you pay for any extra services rendered, since according to your promise given more than a hundred times, you would help me out at any time with a moderate amount of capital in new deals, but you now flatly refuse to do anything for me. This shows that you do not appreciate for a minute the hard work I did for you, and instead of canceling the charge for extra services I now request and demand remittance."

It is urged that this letter shows that the services rendered were voluntary, and with no expectation at the time of rendition that they were to be compensated for, and that it was only the failure of the de-

fendant to carry out another arrangement to assist plaintiff in other factory deals that caused him to make his claim for extra services. It is plaintiff's contention that he expected compensation at the time the services were rendered, and that it was agreed upon that he should have it; that the letter simply shows that he felt kindly towards the defendant, and did not intend to make defendant pay for these services in case their business relations continued. We are strongly impressed, however, that the significant statement in the letter of April 5th showed the true intent of the plaintiff not to charge the defendant for the services when they were rendered, especially when considered in connection with his oral testimony when he said, "My intentions were not to charge him if he would do what he promised to do for this work," and also the fact that he kept no record of the time spent in extra services. It is also to be presumed, not conclusively, but as a matter of fact, that whatever services plaintiff rendered were rendered in performance of the contract. The services might have been rendered in performance of the contract, and the statement in the letter, "I did not intend to make you pay for extra services rendered," etc., we think, is clearly an admission that when they were rendered they were rendered in performance of the contract. The presumption referred to and the letter and corroborating evidence are so persuasive, to our minds, that we are of the opinion that the circuit judge should have granted the motion for a new trial on the ground that the verdict was clearly against the weight of the evidence. As this conclusion necessitates sending the case back for a new trial, we shall consider some of the other questions raised on this appeal.

**Proofs Affecting Making Contract February 20, 1904.** The circuit judge held and instructed the jury that there could be no recovery for services per-

formed or the expenditures made prior to February 20, 1904, for the reason that all these matters had merged in the contract. The defendant offered in evidence certain correspondence between the parties prior to that time, and also endeavored to show conversation which took place between the parties in the office of the attorney at the time the contract was made. In the letter of February 13, 1904, written by the defendant to plaintiff at Janesville, he said, after discussing the removal of the factory in question:

"And of course we would also want it distinctly understood that we could not allow anything for any promotion, expenses or anything of that kind."

It is clear that the purpose of offering this letter and a draft of the proposed contract made previous to the meeting in the attorney's office, when the agreement was actually signed, was to vary the terms of the contract as construed by the court, and was an effort to show that the claimed items for extras were intended to be within the terms of the agreement. The rulings of the court in excluding these writings were proper. It must be assumed that the contract as made was the culmination of the negotiations between the parties, and, its terms not being ambiguous, these writings were inadmissible. *Eaton* v. *Gladwell,* 108 Mich. 678 (66 N. W. 598) ; *Mouat* v. *Montague,* 122 Mich. 334 (81 N. W. 112) ; 17 Cyc. p. 596. The evidence of the conversation had before the contract was also inadmissible. *Cohen* v. *Jackoboice,* 101 Mich. 409 (59 N. W. 665) ; *R. K. Carter & Co.* v. *Weber,* 138 Mich. 576 (101 N. W. 818) ; *Wallace* v. *Kelly,* 148 Mich. 336 (111 N. W. 1049, 118 Am. St. Rep. 580) ; *International Text-Book Co.* v. *Marvin,* 166 Mich. 660 (132 N. W. 437).

**Bill of Particulars and Amendment Thereto.** Without leave of the court, on June 6, 1911, plaintiff filed an amendment to his bill of particulars, by which

amendment the limit of 1904, fixed as to several items, was advanced one year, making the same 1905. On June 11, 1911, the defendant entered a special motion to strike such amendment from the files, for the reason, in substance, that the same ' was filed without leave of court, and that it covered new and distinct claims of plaintiff against defendant after the statute of limitations had run, and after the taking of the testimony of several witnesses. The hearing on this motion was postponed until the trial of the cause, at which time the court held the amendments properly made. The mere change in the date did not, in our judgment, introduce a new cause of action, and, under the rule announced in *Pratt* v. *Montcalm Circuit Judge,* 105 Mich. 499 (63 N. W. 506), unless this is the result, the amendment is proper. As stated in 1 Enc. Pl. & Prac. p. 564:

"The test is whether the proposed amendment is a different matter, another subject of controversy, or the same matter more fully or differently laid to meet the possible scope and varying phases of the testimony."

See, also, *Connell* v. *McNett,* 109 Mich. 329 (67 N. W. 344) ; *City of Detroit* v. *Wayne Circuit Judge,* 125 Mich. 634 (85 N. W. 1) ; *Jones* v. *Pendleton,* 151 Mich. 442 (115 N. W. 468) ; *Croze* v. *Land Co.,* 153 Mich. 363 (117 N. W. 81). The allowance of an amendment to the bill of particulars is discretionary. *City of Battle Creek* v. *Haak,* 139 Mich. 514 (102 N. W. 1005).

**Statute of Frauds.** The Rock Island Sugar Company was incorporated on March 4, 1904, for the purpose of owning and operating the Janesville plant. It is claimed that compensation for any services or expenditures as claimed by plaintiff, if resting on an implied contract, would create a liability against the sugar company, and not against the defendant, as the benefit would accrue to it, and not to him, and if this

is true, the action would be barred by the statute of frauds. The theory upon which this case was submitted to the jury was that the services rendered and the expenditures made were made at the request of the defendant. There is nothing in the record to show that the items of plaintiff's claim arose otherwise than through plaintiff's dealings with the defendant, with whom he had his correspondence and conversations. We are not impressed that there is any merit in this claim.

**Set-Offs.** The claim to set-offs arose from the following writing:

"MR. M. R. OSBURN,
     "Mgr. Rock County Sugar Co.,
          "Janesville, Wis.
*"Dear Sir:*
     "I herewith offer to buy your total output of dried beet pulp and dried molasses beet pulp manufactured by you during the beet slicing season of 1904 and 5 at the price of $12.00 per ton in bags f. o. b. cars Janesville.
                         "Yours truly,
                              "THEO. HAPKE.
     "Accepted:
     "Terms (20) twenty days net cash.
     "ROCK COUNTY SUGAR COMPANY,
          "By M. R. OSBURN, General Manager.
                    "JAMES DAVIDSON.
                    "THEO. HAPKE."

In a notice of set-off it was defendant's claim that plaintiff owes, as a result of this contract, $2,526.14 for beet pulp delivered by the sugar company to plaintiff. It is plaintiff's position that he also has a claim against the sugar company as an offset to this claim. It quite clearly appears from the record that plaintiff's dealings with the sugar company were separate and distinct from his business relations with the defendant. The fact that the defendant owned practically all of the stock of the sugar company did not alter the fact that it was a separate and distinct legal

entity. It was not a party to this litigation. Plaintiff could not urge his claim against the sugar company in this litigation, and so its claim could not be offset against plaintiff's present claim.

Other assignments of error relate to the charge of the court, admission of testimony, and limiting cross-examination. We are convinced that there is no merit in these contentions, as no prejudicial error was committed.

However, for the reason stated, the case will be reversed, and a new trial granted.

McALVAY, C. J., and BROOKE, STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.