HALPERIN BROTHERS & DAVIS CO. *v.* FIDELITY & CAS-
UALTY CO. OF NEW YORK.

1. INSURANCE — BURGLARY INSURANCE — PROOF OF LOSS — SUFFI-
CIENCY.

In an action on a burglary insurance policy covering
plaintiff's retail stock of men's clothing and furnishings,
testimony tending to show the inventory value of the
stock at a certain date, to which was added the amount
of the purchases from said date to the date of the burglary,
and from this sum was deducted the amount of the sales
and profit during said period, *held,* sufficient to present
a method by which might be determined approximately
the amount of the loss.

2. NEW TRIAL—JURORS—MISCONDUCT—AFFIDAVITS OF COJURORS.

Misconduct of jurors may not be shown by affidavits of
their cojurymen.

Error to Wayne; Webster (Arthur), J.    Submitted
June 16, 1922.    (Docket No. 83.)    Decided July 20,
1922.

Assumpsit by Halperin Bros. & Davis Company, Inc.,
against the Fidelity & Casualty Company of New
York on a policy of insurance against burglary.   Judg-
ment for plaintiff.    Defendant brings error.    Af-
firmed.

*Codd, Bishop & Kilpatrick,* for appellant.

*Butzel, O'Brien, Levin & Winston* and *Butzel &
Butzel,* for appellee.

BIRD, J.    In March, 1919, plaintiff was a retail
dealer in men's clothing and furnishings, on Hastings
street, in the city of Detroit.    On March 7, 1919, the
company took out a burglary policy with defendant

in the sum of $5,000. On the night of March 26, 1919, the store was burglarized and a large amount of merchandise taken. Plaintiff immediately notified the police, also the defendant, and caused an inventory to be taken of what remained, and soon after made proofs of loss and submitted them to defendant. Defendant declined to pay on the ground that plaintiff had over-estimated its loss. Litigation followed in which plaintiff recovered a judgment for $5,000. Defendant made application for a new trial but this was denied. The principal question discussed in this court is that the verdict was against the overwhelming weight of the evidence.

To establish the extent of its loss on the trial plaintiff exhibited its books and invoices and also its inventory taken as of the 31st of December, 1918. It appeared from the inventory taken at that time that the cost price of plaintiff's stock was $28,059.17. To this sum it added $21,675.80, its purchases from January 1, 1919, to the date of the burglary. These two sums made a total of $49,734.97, the amount of merchandise which plaintiff would have had on hand had no sales been made. From this total it deducted its sales of $17,403.11, less the 30 per cent. profit thereon, leaving the cost price of merchandise sold the sum of $12,182.18. Deducting this sum from the $49,734.97, left a balance of $37,552.79, the amount of inventory which it should have had on hand at the date of the burglary. The inventory taken immediately after the burglary showed that it had on hand $29,843.92. Deducting this from the inventory which it should have had, namely, $37,552.79, it left a balance of $7,708.87, which represents plaintiff's actual loss.

The conclusion reached by the foregoing method of computation was aided and corroborated somewhat by the testimony of Herman J. Halperin, who was a

stockholder of the company and clerk, who had full charge of the clothing and furnishing departments. Bearing on his duties he testified:

"At the time of the burglary I was in full charge of the clothing and furnishing department. I have been in the clothing business all my life and have worked in many places. By having charge of the clothing department in this store, I mean taking care of the stock, helping with the buying, marking, checking of all invoices that come in, cleaning the stock and seeing to practically all the sales. I went over the stock two or three times a day to straighten it out, and after I finished waiting on customers I generally straightened the stock out. I marked the clothing as it came in, tagged it and hung it on racks."

There also testified one of the parties who was informed against in the criminal court for receiving some of the stolen merchandise. This testimony was not of great value, but it tended to corroborate the claim of the plaintiff that it lost upwards of $5,000 in merchandise.

1. The method employed to determine the amount of merchandise stolen appeals to us as one by which the amount of loss could be approximately determined. This was the opinion of the public accountant who examined the books and invoices of the firm. It would, undoubtedly, be very difficult in such a case to determine with absolute accuracy the value of the goods extracted. This method was, at least, very helpful to the jury. Considerable criticism is made of the testimony of Herman Halperin because he testified he knew the condition of the stock each night when he left the store. While Mr. Halperin may not have been able to recall as much as he claimed each night he was, undoubtedly, very familiar with the stock. What he was able to recall was helpful to the jury in reaching a conclusion. The testimony

as a whole enabled the jury to reach a reasonable conclusion in the premises and we are not inclined to disturb it.

2. Another question is raised affecting the conduct of two of the jurors who sat in the panel. Upon an application for a new trial an affidavit of one of the jurors was offered to the effect that he saw juror Ewald and Abraham Halperin, president of plaintiff corporation, in a five-minute conversation in the corridor soon after Halperin left the witness stand.

Another affidavit made by a juror was filed showing that juror Turney, during an intermission of court, made comments upon the testimony of defendant, which showed a most decided bias against the defendant.

The only proof of misconduct of these jurors was made by their cojurymen. This showing, under the rule established by the case of *In re Merriman's Appeal,* 108 Mich. 454, cannot be considered by the court. See, also, the recent case of *Beaubien* v. *Railway,* 216 Mich. 391. In view of this rule there is no occasion for us to consider this aspect of the case.

The judgment is affirmed.

FELLOWS, C. J., and WIEST, MCDONALD, CLARK, SHARPE, MOORE, and STEERE, JJ., concurred.