## WITTER v. LEVEQUE.

1. CORPORATIONS—WHERE DEMAND THAT CORPORATION PROSECUTE
   SUIT WOULD BE FUTILE NO DEMAND NECESSARY.
   Where it is apparent that, at the time a suit was instituted by
   minority stockholders for the purpose of redressing mismanage-
   ment and fraudulent and careless acts on the part of directors
   and stockholders, a demand on the board of directors to
   prosecute such suit on behalf of the corporation would have
   met with refusal, a motion to dismiss the suit because no such
   demand was made was properly denied.

2. SAME—WHERE DIRECTORS AND STOCKHOLDERS HAD KNOWLEDGE
   OF TRANSACTION, FRAUD MAY NOT BE ALLEGED THEREON THREE
   YEARS LATER.
   Where promoters of a theatre corporation agreed to pay 'a
   certain price for a lot to be used with others as the theatre
   site, part of the purchase price to be in cash and the balance
   in preferred and common stock of the corporation, the transac-
   tion, which was before the board of directors many times, and
   the relative value of the lot as compared with others con-
   tracted for was well known to them and other stockholders,
   may not be attacked as fraudulent three years later, although
   the price paid may have been too high.

3. SAME—DIRECTOR MUST ACCOUNT FOR SECRET PROFIT MADE IN
   TRANSACTION WITH CORPORATION.
   Where a director of a theatre corporation purchased a lot to be
   used as part of the theatre site, and the stockholders under-
   stood that he was selling it to the corporation at the price
   paid by him, he should be required to account to the corpora-
   tion for the secret profit made by him on the transaction.

4. SAME—ALLOWANCE BY DIRECTORS TO MEMBER OF BOARD FOR RENT
   SUBJECT TO SCRUTINY BY COURT—DELAWARE CONSTITUTION AND
   STATUTE NOT CONTROLLING.
   Allowance by the board of directors of a Delaware corporation
   doing business in Michigan to a member of the board for
   rent is subject to scrutiny by the court, and, where unreason-
   able, may be reduced to a reasonable amount; the constitution

and statute of Delaware to the effect that, in the absence of actual fraud, the judgment of the directors shall be conclusive not being controlling, particularly where the director is in charge of the management and in control of the affairs of the corporation.

5. SAME—FRAUD NOT SHOWN.

The conclusion of the court below that there was not any sufficient showing that loss sustained by the corporation was the result of any wrongful act on the part of defendant director, and that the difficulties into which it fell were due, in part at least, to the failure of the subscribers to the stock to pay up as to negligence or breach of duty on the part of the directors, *held*, justified by the evidence.

6. SAME—APPOINTMENT OF RECEIVER NOT WARRANTED.

The financial condition of the corporation, as disclosed in the record, *held*, not to warrant the appointment of a receiver with the expense to the stockholders incident thereto.

7. TRIAL—CHARGE OF PREJUDICE ON PART OF TRIAL JUDGE WITHOUT JUSTIFICATION.

The charge made by plaintiffs' counsel of prejudice and bias on the part of the trial judge, *held*, to be without support and without justification.

Appeal from Wayne; Miller (Guy A.), J. Submitted April 25, 1928. (Docket No. 108, Calendar No. 33,221.) Decided October 1, 1928.

Bill by Frank C. Witter and others against Gustave E. LeVeque, the Northern Theatre Company, and others for the appointment of a receiver of defendant company, for an accounting, and for an injunction. From the decree rendered, plaintiffs and defendant LeVeque appeal. Affirmed.

*Thomas F. Murphy* (*Harry J. Connine*, of counsel), for plaintiffs.

*McDowell & White,* for defendant LeVeque.

*William S. McDowell,* for defendant Northern Theatre Co.

SHARPE, J.   The Northern Theatre Company, a Delaware corporation, was organized on the 18th day of March, 1921, for the purpose of operating "theatres of all kinds," with an authorized capital of 3,000 shares of preferred stock of the par value of $100 per share and 6,000 shares of common stock without a par value.   The original promoters seem to have been J. A. Mowat and Harry E. Slater.   The contemplated site of the theatre was on Woodward avenue near Louise avenue in the city of Highland Park.   It embraced three parcels of land, "A" and "B" fronting on Woodward and extending 200 feet to an alley in the rear, and "C" having an 88-foot frontage on Louise avenue and extending to the rear of parcel "A."   Mowat had secured contracts for the purchase of these lots before the organization of the corporation, and these contracts were later assigned to it.   Parcel "C" and an additional lot adjoining it (parcel "D") were purchased from the defendant LeVeque.

The first meeting of the stockholders, at which all of them were present, was held on March 28, 1921. While plans and specifications were prepared, no work was done on the building before this suit was begun on May 6, 1924.   An adjourned meeting of the stockholders had been held on May 3d of that year, at which the report of an investigating committee, which had been theretofore appointed, was considered.   The committee desired further time, but those present, representing a majority of the stock, voted for their discharge.   Certain minority stockholders thereupon withdrew from the meeting, and a few days later filed the bill of complaint herein.   The defendants above named were at that time, or had been, members of the board of directors of the corporation.   The bill charges mismanagement and fraud-

ulent and careless acts on the part of the defendants. The defendant LeVeque was charged with having fraudulently sold certain real estate to the corporation at a much greater price than its actual value. A receiver was prayed for and also an injunction restraining the defendants from disposing of their holdings in the corporation. Restitution on the part of LeVeque was also prayed for.

An amended bill of complaint was filed, which contained an allegation that plaintiffs also prosecuted on behalf "of a great majority in number and in amount of the preferred stock of the corporation" and "in behalf of said corporation," and also that no demand had been made on the officers to institute such a proceeding for the reason that the interest of such officers, and particularly of the defendant LeVeque, who was then president, "would make such demand futile, and would result in probable further losses to the corporation." Certain contracts and conveyances, made by LeVeque with and to the corporation, were referred to. A further amendment was made in which the work of the investigating committee was set forth at length.

Answers were filed by the corporation and by LeVeque. During the course of the proceedings, discontinuance was had as to all of the defendants except LeVeque and the corporation on the voluntary surrender of stock held by them. In the decree as entered, the conveyance of parcel "C" to the corporation by the defendant LeVeque was upheld, and the corporation denied relief relative thereto. As to parcel "D," LeVeque was ordered to pay into the treasury the sum of $2,300, and certain stock held by him was ordered canceled. Certain furniture and equipment in the possession of LeVeque was decreed to belong to the corporation. LeVeque

was ordered to pay to the corporation certain other moneys on account of purchases of stock made by others. It was also decreed that five shares of preferred and five shares of common stock, issued to him for the rental of office space, should be canceled because in excess of the reasonable value thereof. The prayer for a receiver was denied and the bill dismissed as to the theatre company. Certain costs and disbursements were allowed to the plaintiffs and their attorneys, and the costs of suit were to be taxed in their favor. The plaintiffs and the defendant LeVeque appeal.

1. Motion of Defendant LeVeque to Dismiss. This motion was based on the fact that no demand had been made on the corporation to prosecute the suit. The trial court stated his reasons at length for its denial. It suffices to say that it is apparent that, at the time the bill was filed, both the stockholders, as indicated by their voting strength, and the board of directors, were in sympathy with the claims made by LeVeque, and that a demand therefor would have been refused. The rule of law relating thereto is thus stated in 4 Fletcher Cyclopedia Corporations, § 2682:

"When a request to sue will be deemed useless, as determined by the courts, is governed by the rules in regard thereto applicable to stockholders' suits in general; and it is only necessary to state in this connection that no demand is necessary where it is clear that it would be futile, as where the officers sought to be held liable are themselves in control of the corporation."

See, also, *Torrey* v. *Toledo Cement Co.*, 150 Mich. 86; *Robinson* v. *DeLuxe Motor Car Co.*, 170 Mich. 163; *Sant* v. *Perronville Shingle Co.*, 179 Mich. 42; *Freeman* v. *Mitchell*, 198 Mich. 207. The cases prin-

cipally relied on by defendant's counsel (*Hawes* v. *Oakland,* 104 U. S. 450, and *Chapin* v. *Telephone Co.,* 196 Mich. 331) are not, in our opinion, applicable to the facts here presented.

2. Parcel "C." This lot fronted on Louise avenue. An oil station occupied the corner, in the rear of which was parcel "D," hereafter referred to. Parcel "C" was between parcel "D" and the alley in the rear. LeVeque testified that Slater and Mowat, two of the original promoters, who were at that time strangers to him, came to see him in February, 1921, relative to the purchase of this lot; that at that time he gave them an option on the lot, and later, on March 10th, he made a written proposition to Mowat, which was accepted by him in writing, to sell this lot to him (in case the theatre company was organized with a capital stock not to exceed $300,000) for the sum of $25,000, for which he should receive $1,250 cash, $11,100 worth of preferred and 4,721 shares of common stock in the corporation, and the balance of $12,650 payable in monthly payments of $200, the balance to be paid on or before December 15, 1921. This was followed by a more formal land contract, which Mowat assigned to the corporation. On November 21, 1921, a new contract for the sale of the lot was entered into between LeVeque and his wife as vendors and the theatre company as vendee, extending the time of final payment to March 9, 1922.

At the first meeting of the board of directors, held immediately following their election, at which all of them were present, the assignment of the LeVeque contract by Mowat to the company was presented and accepted. It cannot well be doubted that all of the members were familiar with the location of this lot and its relative value as compared with the other lots contracted for. There is proof that its then

value was much less than the contract price. Payments were thereafter made thereon. On February 7, 1922, another agreement between the same parties was executed, wherein it was recited that there was a balance then due on the contract of $5,000, and it was agreed that the vendors might mortgage the lot for this sum and convey it to the theatre company subject thereto. This was done and the property deeded on February 24, 1922. New stockholders and directors had in the meantime become interested. When this bill was filed, in May, 1924, this transaction was for the first time attacked as unconscionable and fraudulent because made between the corporation and one of its promoters, organizers, and directors. Of the men acting as directors at the time of its purchase, Dr. Suggs, who resigned in the fall of 1921, and LeVeque were the only ones sworn as witnesses. There is nothing in the record to indicate that there was any fraud or concealment in the transaction relating to this purchase. The price paid was doubtless more than the property was fairly worth. But LeVeque was under no obligation to sell, and, after the lapse of such a period of time and the many times the transaction relating thereto was before the board of directors, the integrity of a majority of whom is not questioned, we agree with the trial court that the record does not justify interference therewith.

3. Parcel "D." This parcel was a lot fronting on Louise avenue between parcel "C" and the oil station on the corner of Woodward and Louise. It was 52 x 60 feet in size. On January 11, 1923, LeVeque entered into a contract with Henry W., J. Anthony, and George H. Grix, three brothers, wherein he agreed to sell this lot to the theatre company for $6,000 cash and 96 shares of preferred and

the same number of shares of common stock. The brothers agreed to purchase 120 shares of each kind of stock and to pay therefor $12,000. They were also to receive "the fifteen shares of 'Slater' stock and all of the promotion common stock which was allotted to the said 'Slater,' which is to be divided equally among said Grixes." The money paid by them was to be used in payment of the mortgage, taxes, and interest on parcel "C," and the cash payment on parcel "D." LeVeque testified that this parcel cost him $9,600. While there was some proof that it was worth less, no evidence was offered, although easily obtainable, to dispute his statement. The decree provided that he should pay into the treasury of the corporation the difference between what he received and this sum, and that the stock issued to him should be canceled.

Counsel for LeVeque insist that, as this deal was ratified and approved by the stockholders at their annual meeting in March, 1923, the decree in this respect was unwarranted. LeVeque was then a stockholder and a director. Anthony Grix testified that this deal was made at the request of LeVeque, and that he and his brothers entered into it because LeVeque said that the corporation had to acquire it in order to erect the building that was planned. This witness was induced by LeVeque to act as treasurer of the corporation. He was assured that LeVeque would do all the work pertaining to that office. One of the brothers, Henry, is a plaintiff herein. It is apparent that they placed implicit confidence in LeVeque and relied on all that he said relative to the affairs of the corporation. It clearly appears that these brothers and the other stockholders acted under the belief that the property was turned in to the corporation at the price LeVeque paid for it.

We see no inequity in requiring him to account for the secret profit he made.

4. *Allowance for Rent.* The allowance by the board of directors to LeVeque, a member thereof, for rental of office space, was, of course, subject to scrutiny. In the opinion of the trial court "one thousand dollars would have been ample payment for this purpose." We also so conclude. The claim of counsel for the defendant is based on the constitution of Delaware (art. 9, § 3) which reads as follows:

"No corporation shall issue stock, except for money paid, labor done or personal property, or real estate or leases thereof actually acquired by such corporation,"

and the statute of said State (section 14, Delaware corporation law), containing similar language. The last sentence of this section reads:

"And in the absence of actual fraud in the transaction, the judgment of the directors, as to the value of such labor, property, real estate or leases, shall be conclusive."

We do not think this provision controlling where the lease was made with a member of the board, particularly when it appears, as here, that he was in charge of the management and control of the affairs of the corporation.

5. *Fraud and Mismanagement.* Much proof was offered tending to show that purchasers of stock relied on representations of the salesmen and literature furnished them by order of the board of directors. It also quite clearly appears that the affairs of the corporation were not well managed and that loss was occasioned thereby. The trial court, after referring to the fact that discontinuance was had by

the plaintiffs as to all of the individual defendants who were charged in the bill as co-conspirators with LeVeque on the surrender of certain stocks held by them, expressed his opinion that there was not—

"any sufficient showing that the loss sustained by the corporation was the result of any wrongful act" on the part of LeVeque. He further said:

"The most that can be claimed is that the directors did not exercise good judgment, and it is at least as open to argument that the difficulties into which the corporation fell were due, in part at least, to the failure of the subscribers to the stock sold to pay up their subscriptions as they were to negligence or breach of duty on the part of the directors."

The conclusion thus reached was justified by the evidence.

6. Receivership. The financial condition of this corporation, as disclosed in the record, does not, in our opinion, warrant the appointment of a receiver of its affairs with the expense to the stockholders incident thereto.

The other questions presented on the appeal have been considered. They do not merit the extending of this already lengthy opinion.

The record in this case consists of three volumes, containing 1,205 pages. Plaintiffs' brief contains 204 pages. The court many times suggested to plaintiffs' counsel that the proof should be restricted to the issues made by the pleadings. Had such advice been followed, both the trial court and this court would have been saved much unnecessary labor.

We cannot pass without comment the charge made by plaintiffs' counsel, and several times repeated, of "prejudice and bias" on the part of the trial judge;

a charge which we find to be without support and without justification.

The decree of the trial court is affirmed. As both parties have appealed, no costs in this court will be allowed.

FEAD, C. J., and NORTH, FELLOWS, WIEST, CLARK, McDONALD, and POTTER, JJ., concurred.