BALLANCE *v.* DUNNINGTON.

1. NEW TRIAL—AFFIDAVITS OF JURORS—JURORS MAY NOT IMPEACH VERDICT.

   Affidavits of jurors may not be considered for the purpose of impeaching the verdict.

2. SAME—COMPROMISE VERDICT.

   Affidavits of jurors stating that the amount of the verdict was reached by each juror writing down the sum he or she favored,

On excessiveness of verdicts in actions for injuries not resulting in death, see annotation in L. R. A. 1915F, 30; 46 A. L. R. 1230.

adding together, and then dividing by 12, which was denied in part by affidavits of other jurors, may not be considered in determining a motion for a new trial.

3. SAME—READING NEWSPAPER ARTICLES.

Affidavits stating that some of the jurors had read articles published in the local papers during the course of the trial, although instructed by the court not to do so, *held*, insufficient cause for granting a new trial.

4. SAME—WEIGHT OF EVIDENCE.

Verdict in favor of plaintiff, *held*, not against the overwhelming weight of the evidence.

5. SAME—DAMAGES—EXCESSIVE VERDICT.

A verdict for $16,000 for the loss of a foot cannot be said to be so excessive as to necessitate the granting of a new trial, where plaintiff was 42 years of age at the time of his injury, had been earning $135 a month as a truck driver, has sustained probable loss of earning power, and has suffered intense pain.

6. TRIAL—CONDUCT OF JURORS AND SPECTATORS—CRITICISM OF TRIAL JUDGE WITHOUT BASIS IMPROPER.

An affidavit by defendant complaining of the conduct of the jury and of persons in the court room during the trial, claiming that they "laughed and sneered" at him, where the record does not disclose that the attention of the court was called to such conduct, was properly characterized by the trial judge as unworthy of belief; and criticism by defendant's counsel of the judge for said statement is without basis and improper.

7. SAME—EXAMINATION OF JURORS WITHIN DISCRETION OF COURT.

Latitude allowed in the examination of jurors, when examined by counsel, is largely within the discretion of the trial court.

8. SAME—EXAMINATION OF JUROR NOT PREJUDICIAL.

A question asked of a juror, upon his examination by counsel, as to whether he would render such a verdict as would compensate plaintiff for the loss of his foot and pain suffered if shown by a preponderance of the evidence to have been caused by defendant's negligence, *held*, not prejudicial, but the better practice would be not to permit the time of the court to be taken up with such questions, upon which it is the duty of the court to instruct the jury when the case is submitted to them for decision.

9. WITNESSES—PHYSICIANS AND SURGEONS—EVIDENCE—ADMISSI-
BILITY.

Although a practicing physician and surgeon had testified, in
an action for malpractice in the alleged negligent use of an
X-ray machine resulting in the loss of plaintiff's foot, that
he had a general understanding of the work of an X-ray
machine, but was not competent to judge that a certain
exposure was safe or unsafe—"would not want to within
limits," it was not error to permit him to answer "yes"
to the specific question as to whether or not a 20-minute
exposure continuously on an object or a human body was
unsafe.

10. EVIDENCE—TRANSCRIPT OF DEFENDANT'S TESTIMONY AT FORMER
TRIAL ADMISSIBLE FOR PURPOSES OF CROSS-EXAMINATION.

A transcript of defendant's testimony given on a former trial
was admissible for the purpose of showing that no reference
or no testimony was read from a card index, so-called, intro-
duced into the case, and also for the purpose of introducing
the statements made on the former trial concerning which
he was cross-examined.

11. TRIAL—ARGUMENT OF COUNSEL.

The claim of defendant's counsel that plaintiff's counsel, in his
argument, used portions of defendant's testimony on the
former trial, which, they claim, was improper, *held*, not sus-
tained by a reading of the argument, which appears in full
in the record.

Error to Berrien; White (Charles E.), J.   Sub-
mitted January 9, 1929.   (Docket No. 42, Calendar
No. 34,046.)   Decided March 28, 1929.

Case by William Ballance against Ruel N. Dun-
nington for malpractice.   Judgment for plaintiff.
Defendant brings error.   Affirmed.

*John J. Sterling* and *Frank T. Lodge*, for appel-
lant.

*Charles W. Gore*, for appellee.

SHARPE, J. The facts in this case were quite fully stated on review of the judgment first rendered, 241 Mich. 383. Another trial has been had, resulting in a verdict for plaintiff. A motion for a new trial was denied and judgment entered on the verdict. Defendant seeks review by writ of error.

The testimony differs so little from that submitted at the former trial, except as to the number of witnesses called, that a review thereof seems unnecessary. It was there said, ''We think the evidence presented an issue of fact for the jury.'' A reading of the record now before us leads to the same conclusion.

There are 54 assignments of error. While counsel say that ''defendant relies upon all the errors assigned,'' it will be unnecessary to consider them separately. We will first examine those discussed by counsel under the head of ''Argument'' in their brief.

1. *Denial of Motion for a New Trial.* (*a*) In support of this motion, defendant submitted the affidavits of four jurors, who deposed, in substance, that it was agreed in the jury room that the amount of the verdict should be determined by each juror writing down the sum he or she favored, and that these should be added and then divided by twelve and the result announced as their verdict, and that this course was pursued. In opposition to this claim, plaintiff submitted the affidavits of a number of jurors, who deposed that it was proposed that an average should be obtained in the manner stated but no agreement was made that the result should be announced as the verdict, and that the sum so arrived at was not the amount of the verdict as rendered.

These conflicting affidavits serve well to justify the rule this court has so many times announced that affidavits of jurors will not be considered for such a purpose. See *In re Merriman's Appeal,* 108 Mich. 454, where the authorities from other States are collected. See, also, *City of Battle Creek* v. *Haak,* 139 Mich. 514, in which a similar question was presented. Later cases in which the rule has been adhered to are *Spencer* v. *Johnson,* 185 Mich. 85; *Beaubien* v. *Railway,* 216 Mich. 391.

(*b*) Affidavits were also presented stating that some of the jurors had read articles published in the local papers during the course of the trial, although instructed by the court not to do so. There are also denials of these averments. This court has also several times ruled adversely to this claim of error. *Sherwood* v. *Railway Co.,* 88 Mich. 108; *In re Thompson's Estate,* 157 Mich. 669; *Prange* v. *City of Flint,* 217 Mich. 675; *Hatton* v. *Stott,* 220 Mich. 262.

(*c*) Counsel urge that the verdict is against the great weight of the evidence. While this court has not hesitated, on a second review, to reverse a judgment and order a new trial when it appeared that the jury were influenced by considerations other than the exercise of a fair judgment on the questions presented (*In re McIntyre's Estate,* 160 Mich. 117; *Krouse* v. *Railway,* 166 Mich. 147), we do not feel called upon to do so on the record before us. Four doctors testified that in their opinion the condition of plaintiff's foot, necessitating amputation, was caused by an "overdosage" of the X-ray. Those called by defendant ascribed a different cause therefor. Some of them were mistaken. In *McConnell* v. *Elliott,* 242 Mich. 145, 147, it was said:

"The fact that we would reach a different conclusion than did the jury is not controlling. We should

set aside a verdict, and only set one aside, when it is against the overwhelming weight of the evidence.''

(*d*) The verdict on the former trial was $15,000. it is now $16,000. Defendant urges that it is excessive. The plaintiff was 42 years of age at the time of his injury. He had theretofore been employed for about two years as a truck driver, earning $135 per month. He testified:

''The pain was just like somebody was holding your foot on a bed of coals, somebody had hold of it and held it there, and you could not get away. It burned like that day and night, with the exception of what relief I got from the narcotics.''

The doctors who attended him testified that ''he was given hypodermics—injections to allay his pain.'' Morphine was at times injected into his arms. After five months, he was taken to a hospital at Ann Arbor, where his leg was amputated seven inches below the knee. Dr. Cabot, who performed the operation, testified:

''The amount of pain was perhaps the most striking thing about the symptoms. He gave every evidence of being extremely uncomfortable.''

Plaintiff must spend the remainder of his life wearing an artificial leg and be subjected to the inconvenience and embarrassment, as well as probable loss of earning power, due thereto. We cannot say that the verdict was so excessive as to necessitate the granting of a new trial by this court.

(*e*) The defendant made affidavit in support of this motion, in which he bitterly complained of the conduct of the jury and of persons in the court room during the trial. In it he stated, among other things,—

"that numerous persons in the audience at different times, during said trial, when said court was in session, expressed their approval of plaintiff's side of the case, by laughter and other manifestations of approval of said plaintiff's cause,"

—and their disapproval of the defense while he was testifying by "loud laughter and in other ways manifested their derision and disapproval of his testimony;" that certain of the jurors "laughed and sneered" at him; that their hostility "was so apparent that he became greatly embarrassed and confused," and "that no person in authority, at any time, attempted to restrain said persons in the court room, or reprimand them for their improper conduct."

This charge was not only a serious reflection upon the fairness and integrity of the trial judge, but also upon the able counsel representing the defendant. The record does not disclose that the attention of the court was called to such conduct, and we cannot but agree with the trial court in saying that such statements were unworthy of belief. His characterization of this affidavit was fully justified, and furnishes no basis for the criticism of his conduct indulged in by defendant's counsel. We have heretofore referred to the impropriety of such comment (*Witter* v. *LeVeque,* 244 Mich. 83), and trust we may not have occasion to do so again.

2. *Examination of the Jury.* The following question was asked of a juror:

"If you are chosen as a juror, and if you determine from the evidence in this case that the plaintiff did suffer the loss of his leg or right foot and suffered the pain which I have described, and you are satisfied by a preponderance of the evidence that the testimony is true in that respect, will you render

such a verdict as in your judgment will compensate this plaintiff for the injuries he received by reason of the negligence of the defendant?''

Over objection the juror answered: ''If the evidence showed it.''

The latitude allowed in the examination of jurors, when examined by counsel, is largely within the discretion of the trial court. No apparent prejudice could have resulted. It would seem, however, to be the better practice not to permit the time of the court to be taken up by asking questions which involve matters upon which it is the duty of the court to instruct the jury when the case is submitted to them for decision.

3. *Admission of Testimony.* (*a*) Dr. Ellet, a practicing physician and surgeon of Benton Harbor, who examined plaintiff's foot on two occasions at his home, testified:

''I have a general understanding of the work of an X-ray machine. I am not competent to judge that a certain exposure was safe or unsafe. I would not want to within limits.''

After further examination and cross-examination, he was asked by plaintiff's counsel:

''In your ordinary practice as a physician, you may state whether or not a 20-minute exposure continuously on an object or a human body is unsafe?''

Over objection he was permitted to answer, and said, ''I would say yes.''

We see no error in the admission of this answer. It is said to be contradictory of that quoted above. He then stated that he would not want to state ''within limits.'' The question put was specific, as was his answer. Its weight was for the jury. What

has been just said applies also to the answer of Dr. Ryno to a somewhat similar question put to him.

(b) The defendant was cross-examined at length on the testimony given by him on the former trial. Before the argument began, plaintiff's counsel said:

"I would like to introduce into evidence the entire examination of the defendant * * * on the former trial, in order to show that no reference, or no testimony was read from the card index, so-called, introduced into this case, and also for the purpose of introducing the statements made on the former trial, which I inquired about on cross-examination."

On objection that plaintiff's counsel "will use it for other purposes than the purpose for which it is received," and on the assurance that he would not do so, it was admitted. The argument of plaintiff's counsel appears in full in the record. While defendant's counsel say that he "used portions of it in his argument to the jury, all of which was improper," they do not point out wherein plaintiff's counsel so offended, neither does a reading of the argument so disclose. We think the transcript was admissible for the purpose for which it was received, and discover no prejudicial error to defendant resulting from the use made of it.

The other errors assigned, but not discussed at length by counsel, have been examined. We fully appreciate the effect of this verdict upon the professional standing of the defendant, as urged by his counsel, but in our opinion the trial was fairly conducted and without error prejudicial to his rights.

The judgment is affirmed.

NORTH, C. J., and FEAD, FELLOWS, WIEST, CLARK, McDONALD, and POTTER, JJ., concurred.